**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| XIAOMING YANG,<br><br>              Petitioner,<br><br>        v.<br><br>FILED OFFICE DIRECTOR, ENFORCEMENT AND REMOVAL OPERATIONS, ET AL.,<br><br>              Respondents. | Case No. 5:26-cv-02334-AJR<br><br>**MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE** |

**I.**

**INTRODUCTION**

On May 4, 2026, Petitioner Xiaoming Yang ("Petitioner"), an immigration detainee represented by counsel, filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 (the "Petition"), challenging his detention in immigration custody. (Dkt. 1 at 2.)  On May 11, 2026, Respondents Field Office Director, Enforcement and Removal Operations ("ERO"), Kristi Noem, Secretary of U.S. Department of Homeland Security ("DHS"), DHS, Pamela Bondi, U.S. Attorney General, Executive Office for Immigration Review ("EOIR"), and Acting Warden, Desert

View Annex (collectively, "Respondents")[1] filed an Answer to the Petition (the "Answer"). (Dkt. 7.)  On May 12, 2026, Petitioner filed a Reply to the Answer (the "Reply").  (Dkt. 8.)  The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes.  (Dkts. 3, 6.)  For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioner from custody on Petitioner's prior conditions of release.

## II.

## FACTUAL BACKGROUND

The Court sets forth a summary of the relevant factual background based on the facts alleged in the Petition, which is verified by counsel.  (Dkt. 1 at 14.)  Respondents had the opportunity to dispute these facts or provide additional facts, but declined to do so.  (Dkt. 8.)  Therefore, the Court considers the following facts to be undisputed and conceded for purposes of ruling on the Petition.  See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).

Petitioner entered the United States on or about 2023 and submitted a defensive Form I-589 with the EOIR within the one-year filing deadline.  (Dkt. 1 at 9.)  Petitioner's case is currently pending an individual hearing.  (Id.)  Petitioner has significant ties to the community in the United States.  (Id. at 10.)  Petitioner has lived in the U.S. for over 3 years, integrated into the community, established residence, and obtained gainful employment.  (Id.)  Petitioner has lived openly the U.S. during this time without any criminal misconduct, failures to appear, or other indicia of flight risk.  (Id. at 2.)  Petitioner is neither a flight risk nor a danger to the community.  (Id. at 10.)  Petitioner consistently complied with Immigration and Customs Enforcement ("ICE") reporting requirements.  (Id.)

---

[1] Markwayne Mullin and Todd Blanche are substituted in for Kristi Noem and Pamela Bondi, respectively.  See Fed. R. Civ. P. 25(d).

Petitioner was detained on April 14, 2026, when he reported as required to an ICE-scheduled appointment at the ICE office. (Id. at 2.) Petitioner was taken into ICE custody while reporting, as required and on time, to the ICE office. (Id. at 9.) Petitioner's arrest while attending a timely ICE office-scheduled reporting appointment underscores that he was fully compliant with government requirements and therefore cannot reasonably be deemed a flight risk. (Id. at 10.) Following Petitioner's arrest and initial transfer to Desert View Annex on April 14, 2026, ICE issued a custody determination to continue Petitioner's detention without an opportunity to post bond or be released on other conditions. (Id.)

Since being taken into ICE custody, Petitioner has suffered serious cardiac complications. (Id.) Petitioner has been transported to emergency medical care twice and underwent cardiac surgery on April 30, 2026. (Id.) Continued detention poses a significant risk to Petitioner's health and safety. (Id.)

## III.

## SUMMARY OF PETITIONER'S CLAIMS

Petitioner's first claim for relief (Count I) is that his detention violates the Immigration and Nationality Act because Respondents are improperly holding Petitioner under mandatory detention pursuant to 8 U.S.C. § 1225(b)(2), but Petitioner is actually subject to detention under 8 U.S.C. § 1226(a), and entitled to a bond hearing. (Dkt. 1 at 11-12.) Petitioner's second claim for relief (Count II) is that his continued detention violates his due process rights. (Id. at 12.) Petitioner seeks immediate release from custody or in the alternative, a bond hearing pursuant to 8 U.S.C. § 1226(a). (Id. at 13.) Petitioner also seeks an award of attorneys' fees and costs pursuant to the Equal Access to Justice Act (the "EAJA"). (Id.)

\\

\\

3

# IV.

## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. There is no question that these protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or

4

substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights." Regino, 133 F.4th at 959-60. Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted). To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted). With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

## V.

## ANALYSIS

It is undisputed that Petitioner entered the United States on or about 2023 and lived openly in the U.S., integrating into the community, establishing residence, and

obtaining gainful employment.  (Dkt. 1 at 2, 9-10.)  It is also undisputed that Petitioner is pursuing his asylum application and his immigration proceedings are ongoing.  (Id. at 9.)  It is further undisputed that Petitioner has no criminal misconduct, failures to appear, or other indicia of flight risk.  (Id. at 2.)  Instead, Petitioner has complied with all government requirements, including reporting to ICE office visits as required and on time.  (Id. at 2, 9-10.)

Based on these undisputed facts, the Court concludes that Petitioner developed a substantial liberty interest in remaining out of custody based on the life he built in the United States since arriving here in 2003.  See, e.g., Tinoco v. Noem, 2025 WL 3567862, at *6 (E.D. Cal. Dec. 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.").  This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]."  Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Therefore, the Court concludes that Petitioner's arrest by ICE on April 14, 2026, without notice or a pre-deprivation hearing violated Petitioner's procedural due process rights.  See, e.g., J.A.E.M. v. Wofford, 812 F. Supp. 3d 1058, 1071 (E.D. Cal. 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained. The root requirement of the Due Process Clause is that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest." (internal quotation marks and brackets omitted)); Mourey v. Bowen, 2026 WL

6

467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026). Moreover, it is undisputed that since being taken into custody, Petitioner has not been provided an opportunity to post bond or be released on other conditions. (Dkt. 1 at 10.)

Given this violation of Petitioner's due process rights, the Court further concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's release on his prior conditions of release. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained. See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)). Specifically, the Court concludes that

Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community.  See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").

Finally, the Court notes that Respondents admit that Petitioner is a member of the Bond Eligible Class certified in Maldonado Bautista v. Santacruz, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025), reconsideration granted in part, 2025 WL 3713982 (C.D. Cal. Dec. 18, 2025), and amended and superseded on reconsideration, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025).  (Dkt. 7 at 2.)  On December 18, 2025, the court in Maldonado Bautista entered final judgment and granted declaratory relief to all members of the Bond Eligible Class.  See Bautista v. Santacruz, 2025 WL 3713987, at *32 (C.D. Cal. Dec. 18, 2025), judgment entered sub nom. Maldonado Bautista v. Noem, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025).  Pursuant to the final judgment entered in Maldonado Bautista, "the Bond Eligible Class members are detained under 8 U.S.C. § 1226(a), are not subject to mandatory detention under § 1225(b)(2), and are entitled to consideration for release on bond by immigration officers and, if not released, a custody redetermination hearing before an immigration judge."  Maldonado Bautista v. Noem, 2025 WL 3678485, at *1 (C.D. Cal. Dec. 18, 2025).  On March 6, 2026, the Ninth Circuit

8

administratively stayed the December 18, 2025 declaratory judgment in Maldonado Bautista "insofar as [it] extends beyond the Central District of California" pending a ruling on the Government's motion for a stay pending appeal.  Maldonado Bautista v. Dep't of Homeland Sec., No. 26-1044, Dkt. 5 at 1 (9th Cir. Mar. 6, 2026).  Thus, the December 18, 2025 declaratory judgment remains effective and enforceable within the Central District of California.

Accordingly, the Court concludes that Petitioner is detained pursuant to 8 U.S.C. § 1226(a) and is not subject to mandatory detention under § 1225(b)(2).  See Maldonado Bautista, 2025 WL 3678485, at *1.  Moreover, Petitioner is entitled to an individualized bond hearing pursuant to 8 U.S.C. § 1226(a).[2]  See id.  However, Petitioner is also entitled to immediate release from custody based on the violation

---

[2] The fact that Petitioner could receive a post-deprivation bond hearing while in custody does not remedy the violation of Petitioner's procedural due process rights.  See, e.g., E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); Domingo v. Kaiser, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention.").  Indeed, "an increasing wave of district courts have concluded[] [that] a post-hoc bond hearing cannot support [a] [p]etitioner's continued detention when the underlying arrest, revocation of parole, and re-detention were in violation of [the] [p]etitioner's due process rights and, thus, invalid." Orellana-Rivera v. Johnson, No. EDCV 26-2116-HDV-AJR, Dkt. 18 at 2 & n.2 (internal quotation marks omitted) (citing Mumaev v. Semaia, 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026); Charaf v. Rios, 2026 WL 1270754, at *1 (C.D. Cal. May 5, 2026); Morales v. U.S. Immigr. and Customs Enf't, 2026 WL 1026234 (C.D. Cal. Apr. 15, 2026); Osmel v. D. Marin, 2026 WL 1209477, at *3 (C.D. Cal. Apr. 29, 2026); Singh v. Janecka, 2026 U.S. Dist. LEXIS 95798, at *16–17 (C.D. Cal. Apr. 29, 2026)).

of his procedural due process rights, as explained above.[3]  The statutory basis of Petitioner's detention may become relevant to any future determination of Petitioner's suitability for parole, should he be detained in the future.

Finally, the Court notes that Petitioner also requested an award of reasonable attorneys' fees under the EAJA.  (Dkt. 1 at 13.)  The Court will consider an application under the EAJA that is filed within 30 days of entry of final judgment in this action.  See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action.").

## VI.

## CONCLUSION

Based on the foregoing, the Court GRANTS the Petition as follows. Respondents shall immediately release Petitioner from custody on Petitioner's prior conditions of release (only those conditions, if any, in place prior to Petitioner's detention on April 14, 2026).  Respondents shall also immediately return any confiscated property and documents to Petitioner upon release.  Respondents shall not re-detain Petitioner without providing at least seven (7) days' notice and a pre-deprivation bond hearing.  The pre-deprivation bond hearing shall occur before an Immigration Judge at which the Government bears the burden of proof to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community.  The

---

[3] Petitioner's immediate release, as opposed to a bond hearing, is also necessary here because it is undisputed that since being taken into ICE custody, Petitioner has been transported to emergency medical care twice and underwent cardiac surgery on April 30, 2026.  (Dkt. 1 at 10.)  It is clear that continued detention poses a significant risk to Petitioner's health and safety.  (Id.)

Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard.  The Court declares that Petitioner is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2). Respondents shall file a notice of compliance no later than **twenty-four hours from entry of Judgment**.

IT IS SO ORDERED.

DATED:   May 18, 2026

_____
HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE

11